# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:13-cr-00018-JCM-GWF |
| vs. | **FINDING AND RECOMMENDATION** |
| EDITH GILLESPIE, | |
| Defendant. | Motion to Suppress (#98) |

This matter comes before the Court on Defendant Edith Gillespie's ("Gillespie") Motion to Suppress (#98), filed on April 12, 2013. The Government filed an Opposition (#101) on April 29, 2013. Gillespie filed a Reply (#102) on April 29, 2013. The Court conducted a hearing on the Motions on June 24, 2013. *See Minutes of Proceedings, Doc. #131*. At issue are recordings made of two conversations between Gillespie and Christine Cabingas on January 25, 2012.

## BACKGROUND

Gillespie is charged in an 18-count Indictment (#1) along with ten other co-defendants, including her brother Leon Benzer ("Benzer"). The Indictment includes charges of wire fraud regarding an alleged far-reaching conspiracy wherein the co-conspirators facilitated the purchase of units in housing developments by straw purchasers, who were employed to elect home owner association ("HOA") candidates designated by the co-conspirators. The various HOA boards would subsequently, at the direction of the co-conspirators, award legal and construction work and fees to entities controlled by the co-conspirators.

The Government summarizes its case against Gillespie as follows: Her active participation in the alleged conspiracy began in December of 2005 when she applied for two loans to purchase a condominium at Chateau Versailles. There, Gillespie joined co-conspirators Morris Mattingly,

Darryl Scott Nichols, Marcella Triana, Ralph Priola, Ricky Anderson, and Arnold Myers as "straw owners" for the benefit of Benzer and Silver Lining Construction. To facilitate the purchase, Gillespie, in two separate loan applications, falsely represented (1) that she worked for Silver Lining for over three years at a salary of $8,400.00 per month and (2) that none of the down payment had been borrowed. In reality, Gillespie did not work for Silver Lining and Benzer provided the entirety of the down payment via Benzer's shell company, Blue Sky Business Management. In furtherance of the conspiracy, Gillespie actively recruited Stephanie Markham and Christine and Duane Cabingas to participate, for which the taped conversations indicate she received $2,000.00.

In January of 2012, agents of the Federal Bureau of Investigation and the Las Vegas Metropolitan Police Department approached Gillespie and requested to interview her regarding the HOA investigation, and Gillespie declined. Gillespie indicated she wished to speak to an attorney prior to being interviewed, and Gillespie's Counsel was appointed to represent her on January 12, 2012. Thereafter, on January 25, 2012, agents approached Christine Cabingas ("Cabingas"), who agreed to be interviewed. Cabingas informed the agents that Gillespie had recently contacted her and that she had not returned Gillespie's phone call. Cabingas volunteered to record her ensuing conversation with Gillespie, which the prosecutors involved in the investigation approved. Cabingas subsequently recorded two conversations with Gillespie, one telephonic and one in-person at Gillespie's home, on the evening of January 25, 2012. The Government alleges that in those recorded conversations, Gillespie made incriminating statements. Gillespie was indicted nearly a year later on January 15, 2013. *See Indictment, Doc. #1*.

## DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right [...] to have the Assistance of Counsel for his defense." This right "extends to all critical stages of the criminal process," and "includes all circumstances where certain rights might be sacrificed or lost, or where available defenses may be irretrievably lost." *United States v. Wilson*, 719 F.Supp.2d 1260, 1266 (D. Or. 2010) (quoting *Nunes v. Mueller*, 350 F.3d 1045, 1052 (9th Cir. 2003)).

In *Massiah v. United States*, 377 U.S. 201, 206 (1964), the Supreme Court held the appealing defendant "was denied the basic protections of [the Sixth Amendment]" when the United States introduced at trial his own incriminating words, "which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." The Court further stated that "[a]ny secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal cases and the fundamental rights of persons charged with a crime." *Id*. at 205. The Supreme Court has since consistently held that the right to counsel attaches only after the initiation of formal charges, reiterating this rule in different, but analogous, contexts. *See United States v. Hayes*, 231 F.3d 663, 671 (9th Cir. 2000); *see also Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *Moran v. Burbine*, 475 U.S. 412, 431 (1986).

The law in the Ninth Circuit is equally clear. In *United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981), the Ninth Circuit explicitly rejected a *Massiah* challenge to a tape recording of an informant's conversation with a defendant, who was represented by counsel, before his indictment. That Court stated:

> The short answer to [the appellant's] contention that his right to counsel was breached is that the right to counsel is not viewed to attach prior to the initiation of adversary judicial proceedings against an accused. Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached.

*Id.* at 1338 (internal quotations omitted). The *Kenny* court further expressed concern that the right to counsel sought by the defendant would severely cripple the use of undercover investigations because those engaged in ongoing criminal activity would simply obtain "house counsel," who would have to be informed prior to government use of informants. *Id.*

Similarly, in *United States v. Hayes*, 231 F.3d 663, 666 (9th Cir. 2000), a cooperating co-conspirator permitted agents to surreptitiously record conversations with a defendant represented by counsel. No formal charge, preliminary hearing, indictment, information, or arraignment had occurred when the defendant was recorded. *Id.* at 673. The question before the *Hayes* court was

3

whether seeking an order permitting the deposition of witnesses, which included notice to the then-unindicted defendant, constituted a "functional equivalent" to the initiation of formal charges. *Id.* The court noted that witness depositions have "the trappings of trial about them," and are normally taken only after formal charges are brought. *Id.* The Ninth Circuit continued, however, that "initiation of adversarial criminal proceedings" is the standard, not mere resemblance to trial. *Id.* at 673-74 (citing *United States v. Ash*, 413 U.S. 300, 303 n. 3 (1973)). It is a "clean and clear rule," the court explained, that adversarial proceedings are initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 675. Accordingly, the court found that the government was acting as investigator rather than prosecutor, and the defendant was a target rather than "the accused." *Id.* at 673.

The *Hayes* defendant also argued that the surreptitious recording engaged his *Massiah* rights because he had previously been appointed counsel under the Criminal Justice Act, which contemplates that representation be provided for persons who are entitled to appointment of counsel under the Sixth Amendment. *Id.* at 674. The court rejected this argument as begging the question, explaining that "[t]he appointment of counsel does not create the right to counsel." *Id.* "[T]he appointment of counsel," the court continued, "does not, and indisputably cannot, formally initiate criminal proceedings against anyone." *Id.* Put differently, "the Sixth Amendment right to counsel does not itself turn on whether a target has counsel." *Id.* The Ninth Circuit therefore affirmed the district court's denial of the defendant's motion to suppress for *Massiah* violations. *Id.* at 676. This Court has previously applied this "clean and clear rule" to *Massiah* challenges. *See United States v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1048 (D. Nev. 2006) ("The Court need not reach these issues under the Sixth Amendment, however, because the seizure of Defendants' allegedly privileged attorney-client communications substantially predates the filing of the indictment or other formal criminal proceedings.")

Gillespie relies on *In re Grand Jury Proceedings (Goodman)*, 33 F.3d 1060 (9th Cir. 1994) to argue that the Sixth Amendment can be implicated by pre-indictment conduct. In *Goodman*, counsel for an investigation's "target" cited his client's Sixth Amendment right as just cause for his refusal to produce records pertaining to his fee arrangements. *Id.* at 1062. The district court

4

rejected the counsel's arguments, concluding that the client's Sixth Amendment right had not yet "attached" with respect to matters under investigation absent an indictment. *Id.* The Ninth Circuit disagreed but affirmed on different grounds, stating simply that " [t]he Sixth Amendment *can apply* when the government's conduct occurs pre-indictment." *Id.* (emphasis in original).

Other circuits and cases shed light on when, as the Ninth Circuit stated in *Goodman*, pre-indictment conduct may potentially implicate the Sixth Amendment right to counsel. The First Circuit has found that "the right to counsel might conceivably attach before any formal charges are made [...] in circumstances where the government had crossed the constitutionally significant divide from fact-finder to adversary." *Roberts v. Maine*, 48 F.3d 1287, 1291 (1st Cir. 1995). The First Circuit cautiously noted, however, that such circumstances "must be extremely limited," and indeed was "unable to cite many examples." *Id.* More recently, the Ninth Circuit has explained that the essence of a critical stage in a criminal proceeding requiring counsel is "not its formal resemblance to a trial but the adversary nature of the proceeding." *United States v. Leonti*, 326 F.3d 1111, 1117 (9th Cir. 2003). The Supreme Court has stated that courts ought to look to whether the prosecution "has committed itself to prosecute," and whether the "adverse positions of the government and defendant have solidified," such that the accused "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

In *United States v. Wilson*, 719 F.Supp.2d at 1267, upon which Gillespie relies and which, in turn, relies on *Goodman*, the district court found that the defendant's right to counsel had attached during a pre-indictment plea negotiation. At the negotiation, the defendant's counsel gave inadequate advice regarding the plea offer, and inaccurate advice regarding the defendant's potential sentencing exposure. *Id.* at 1265. After rejecting the plea offer and having been found guilty at trial, the defendant filed a petition to vacate citing ineffective assistance of counsel. *Id.* The government argued the defendant could not premise his claim on his counsel's deficient advice at the pre-indictment plea negotiation, because his Sixth Amendment rights had not yet attached. *Id.* The court found, however, that the "adversarial nature of the [...] plea negotiation, combined with the possibility that [the defendant's] right to trial might be sacrificed or lost, makes clear that

it was a critical stage of the criminal process." *Id.* at 1267.  "The [government] facilitated [...] a formal plea negotiation, told [defendant] he would be indicted, and then presented [him] with a specific plea bargain that, if accepted, would have required him to surrender his constitutional right to trial, and serve six years in prison." *Id.*  The meeting was "not a casual conversation, but a formal negotiation." *Id.*  The court concluded that was "proof that the government made a commitment to prosecution, and that the parties' adverse positions had solidified in *much the same way as when formal charges are filed*." *Id.* (emphasis added).  In reaching this conclusion, *Wilson's* analysis comports with the "functional equivalence" inquiry employed by the Ninth Circuit in *Hayes*.

Here, the Court finds that the Government's recordings of Cabingas' conversations with Gillespie were investigative and did not involve any critical stage of the proceeding.  The conversations occurred nearly a year before the eventual Indictment, and the record does not establish that at the time of the recordings the Government was committed to prosecution.  The outcome of Gillespie's conversations with Cabingas did not imperil any of Gillespie's defenses or rights, such as the right to trial, as was the case in *Wilson*.  Furthermore, a review of the transcripts, *Motion, Doc. #98, Exh. 1*, reveals a casual conversation between two friends, entirely devoid of the "prosecutorial forces" and "substantive and procedural criminal law" that require the assistance of counsel.  *See Kirby*, 406 U.S. at 689.  Rather, it appears to the Court that the Government was engaged in pre-indictment fact gathering.  Although the Court had previously appointed counsel for Gillespie, such an appointment does not automatically entitle her to assistance of counsel at every encounter with the Government.  *See Hayes,* 231 F.3d at 674.  The Court is further persuaded that the undercover investigation at issue here is the type the Ninth Circuit warned might be stymied if Gillespie's contentions were adopted.  *See Kenny*, 645 F.2d at 1338.

This case does not present any of the limited exceptions contemplated by *Goodman* and *Wilson*, and the Court will apply the "clean and clear" rule in the Ninth Circuit that the Sixth Amendment right to counsel attaches only after the initiation of formal charges.  Although Gillespie represents that the Government attempted to place Gillespie into a pre-indictment group plea agreement, such attempts were not functionally equivalent to the initiation of formal charges,

and did not irreversibly transform the Government from investigator to prosecutor. Therefore, the Court finds that at the time the recordings at issue were made, no formal charges had been initiated against Gillespie, and her Sixth Amendment right to counsel had not attached. Accordingly,

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant Edith Gillespie's Motion to Suppress Surreptitious Recording (#98) be **denied**.

### NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 9th day of August, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge