1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

2:13-CV-18 JCM (GWF)

8

UNITED STATES OF AMERICA,

9

Plaintiff(s),

10

v.

11

LEON BENZER, et al.

12

Defendant(s).

13

14

**ORDER**

15

Presently before the court is the report and recommendation of Magistrate Judge Foley (doc.

16

# 159) regarding defendant Edith Gillespie's ("defendant") motion to suppress (doc. # 98).

17

Defendant filed objections (doc. # 165) to which the government responded (doc. # 177).

18

**I.     Background**

19

**A.     Facts**

20

Defendant is charged in an eighteen-count indictment along with ten other co-defendants,

21

including her brother Leon Benzer. The indictment includes charges of wire fraud regarding an

22

alleged conspiracy in which the co-conspirators facilitated the purchase of housing units by straw

23

purchasers who were employed to elect designated home owner association ("HOA") candidates.

24

The various HOA boards would subsequently, at the direction of the co-conspirators, award legal

25

and construction work and fees to entities controlled by the co-conspirators.

26

The government summarizes its case against defendant as follows: Her active participation

27

in the alleged conspiracy began in December 2005 when she applied for two loans to purchase a

28

**James C. Mahan**
**U.S. District Judge**

1  condominium at Chateau Versailles. There, defendant joined co-conspirators Morris Mattingly,

2  Darryl Scott Nichols, Marcella Triana, Ralph Priola, Ricky Anderson, and Arnold Myers as "straw

3  owners" for the benefit of Benzer and Silver Lining Construction.

4      To facilitate the purchase, defendant, in two separate loan applications, falsely represented

5  (1) that she worked for Silver Lining for over three years at a salary of $8,400.00 per month and (2)

6  that none of the down payment had been borrowed. In reality, defendant did not work for Silver

7  Lining and Benzer provided the entirety of the down payment. In furtherance of the conspiracy,

8  defendant actively recruited Stephanie Markham and Christine and Duane Cabingas to participate,

9  for which the taped conversations indicate she received $2,000.00.

10      On January 12, 2012, defendant was appointed counsel after she was notified that she was

11  the target of the government's investigation into the alleged conspiracy. Counsel for defendant met

12  with FBI agents, metropolitan police detectives, and the assistant United States attorney tasked with

13  prosecuting this alleged conspiracy at the local FBI headquarters. After the meeting, conversations

14  took place between the government agents/prosecutors regarding a group plea agreement that was

15  being put together. Defendant was offered to be included in the plea agreement, which included

16  specific "group plea" reductions. Defendant rejected the offer.

17      Thereafter, on January 25, 2012, agents approached Christine Cabingas ("Cabingas"), who

18  agreed to be interviewed. Cabingas informed the agents that defendant had recently contacted her

19  and that she had not yet returned defendant's phone call. Cabingas volunteered to record a

20  conversation with defendant for the government. Cabingas subsequently recorded two conversations

21  with defendant, one telephonic and one in person at defendant's home. The government alleges that

22  in those recorded conversations, defendant made incriminating statements. Defendant was indicted

23  nearly a year later on January 15, 2013.

24      **B.**    **Report & recommendation and objections**

25      Magistrate Judge Foley entered a report and recommendation (doc. # 159) recommending

26  that the court deny the motion to suppress. Judge Foley found that the recordings were merely

27  investigative because they took place prior to the government's formal indictment of defendant.

28

**James C. Mahan**
**U.S. District Judge**

1    Defendant objects to Judge Foley's findings, arguing that defendant's Sixth Amendment
2    rights attached as soon as the government began to make substantive plea offers. Because the
3    recordings were collected after a "critical stage" in the adversary process had begun, defendant
4    asserts that they constitute an unlawful interrogation and must be suppressed. (Doc. # 165).

5    **II.    Legal standard**

6    A party may file specific written objections to the findings and recommendations of a United
7    States magistrate judge made pursuant to Local Rule IB 1–4. 28 U.S.C. § 636(b)(1)(B); LR IB 3–2.
8    Upon the filing of such objections, the district court must make a de novo determination of those
9    portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); LR IB 3–2(b). The
10   district court may accept, reject, or modify, in whole or in part, the findings or recommendations
11   made by the magistrate judge. *Id.*

12   However, the district court need not conduct a hearing to satisfy the statutory requirement
13   that the district court make a "de novo determination." *United States v. Raddatz*, 447 U.S. 667, 674
14   (1980) (observing that there is "nothing in the legislative history of the statute to support the
15   contention that the judge is required to rehear the contested testimony in order to carry out the
16   statutory command to make the required 'determination'").

17   **III.   Discussion**

18   "It has long and clearly been held that criminal defendants are entitled to effective assistance
19   of counsel during all critical stages of the criminal process." *Nunes v. Mueller*, 350 F.3d 1045, 1052
20   (9th Cir. 2003). In *Massiah v. United States*, 377 U.S. 201, 206 (1964), the Supreme Court held the
21   appealing defendant "was denied the basic protections of [the Sixth Amendment]" when the United
22   States introduced at trial his own incriminating words, "which federal agents had deliberately elicited
23   from him after he had been indicted and in the absence of his counsel."

24   The Supreme Court further stated that "[a]ny secret interrogation of the defendant, from and
25   after the finding of the indictment, without the protection afforded by the presence of counsel,
26   contravenes the basic dictates of fairness in the conduct of criminal cases and the fundamental rights
27   of persons charged with a crime." *Id.* at 205.

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

The Ninth Circuit has consistently held that an individual's right to have counsel present during an interrogation is initiated "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *United States v. Hayes*, 231 F.3d 663, 675 (9th Cir. 2000).

In the instant case, defendant argues that her Sixth Amendment rights had attached prior to the recordings taken by Ms. Cabingas, because defendant was both represented by counsel and had been involved in discussions regarding a plea agreement. Thus, defendant asserts, the governments investigation had already turned into an adversarial process even though she had not been formally indicted.

In support of her argument, defendant cites *United States v. Wilson*, which held that a plea-indictment plea negotiation represented a "critical stage" in criminal proceedings and warranted the attachment of the right to presence of counsel. 719 F.Supp. 2d 1260, 1267 (D. Or. 2010). However, this decision is not binding upon this court, and does not carry the weight of the clear and compelling precedent of the Ninth Circuit.

Both defendant and the *Wilson* court have failed to take account of the Ninth Circuit's emphasis on indictment as a *necessary* prerequisite to the attachment of an individual's Sixth Amendment rights. Indeed, in *United States v. Hayes*, the Ninth Circuit specifically rejected the argument that an individual's right to the presence of counsel attached when he was informed that he was the target of a government investigation. 231 F.3d at 675. The *Hayes* court stated "We are loath to engraft some new, pre-indictment proceeding onto the rule, thereby making it no longer clean and clear—and outside the clear boundaries the Supreme Court has established." *Id.*

Therefore, while defendant adamantly argues that the government's attempt to reach a plea agreement indicated the commencement of an adversary proceeding rather than a mere investigation, precedent clearly holds that defendant's right to the presence of counsel did not attach until nearly a year later when she was formally indicted. Accordingly, the court will adopt the recommendation of Magistrate Judge Foley.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

**IV.     Conclusion**

After having conducted a de novo review of those portions of the report objected to,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Magistrate Judge Foley's report and recommendation (doc. # 159) regarding defendant's motion to suppress be, and the same hereby is, ADOPTED in its entirety.

IT IS FURTHER ORDERED that defendant's motion to suppress (doc. # 98) be, and the same hereby is, DENIED.

DATED February 14, 2014.

UNITED STATES DISTRICT JUDGE